NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1600
_____

RENE ANTONIO,
Appellant

v.

HARRAH'S ATLANTIC CITY PROPCO, LLC d/b/a Harrah's Resort; HARRAH'S
ATLANTIC CITY OPERATING CO LLC

v.

SHANTASHA ROSS
_____

On Appeal from the United States District Court for the District of New Jersey
(D.C. No. 1-17-cv-09092)
District Judge:  Honorable Joseph H. Rodriguez
_____

Argued
January 26, 2021

Before:   JORDAN, MATEY, *Circuit Judges*
and HORAN,[*] *District Judge.*

(Filed: March 5, 2021)
_____

_____

[*] Honorable Marilyn Horan, United States District Court Judge for the Western
District of Pennsylvania, sitting by designation.

Thomas Bruno, II   [ARGUED]
Abramson & Denenberg
1315 Walnut Street – Ste. 500
Philadelphia, PA   19107
       *Counsel for Appellant*

Jennifer B. Barr   [ARGUED]
Russell L. Lichtenstein
Ross M. O'Neill
Cooper Levenson
1125 Atlantic Avenue – 3rd Fl.
Atlantic City, NJ   08401
       *Counsel for Appellees*

_____

OPINION**
_____

JORDAN, *Circuit Judge*.

Rene Antonio attended a "Pool After Dark" party at the Harrah's Resort in

Atlantic City.[1]  Attendees drank, listened to music, and danced around a pool at the

center of the venue.  The night she attended, Antonio danced at the pool's edge and was

bumped or pushed in, severely injuring her hand.  She sued Harrah's, alleging, in part,

negligent maintenance of premises.  The District Court granted summary judgment

against her.  It held that Harrah's did not owe a duty to Antonio because the pool was an

obvious hazard.  We will vacate and remand because, despite the obviousness of that

---

** This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

[1] The term "Harrah's" refers collectively to two entities, Harrah's Atlantic City Operating Company LLC and Harrah's Atlantic City Propco, LLC, which does business under the name Harrah's Resort Atlantic City.

hazard, Harrah's should have anticipated that harm would result from drinking and dancing at the edge of a pool, and therefore it owed a duty to its business invitees.

## I.    BACKGROUND

The Pool After Dark party occurred three days a week, year-round, from 10:00 pm to 4:00 am. Harrah's served alcohol at the events, including by offering bottle service to attendees, and drinking was typical. In accordance with state guidelines, Harrah's employed between twenty-five and thirty-five crowd control specialists (i.e., security guards), each of whom was assigned a specific station in the venue. Two Atlantic City Police Officers were stationed outside the event exit, and there was a lifeguard on duty. There were frequent incidents of disorderly conduct, with the attending police officers issuing summonses approximately twice per party-night and ejecting patrons every week for fighting. Over the course of the ten months prior to the night Antonio was injured, there were, according to Harrah's records, eight instances of patrons being intentionally or unintentionally pushed into the pool or nearby hot tub.

On the night of Antonio's injury, there were 1,277 patrons, with people densely packed throughout the space and dancing all the way to the pool's edge. Harrah's had neither warning signs nor barriers between attendees and the pool, and there was no designated dance area. At one point in the evening, Antonio chatted with the boyfriend of the Third-Party Defendant in this case, Shantasha Ross. Soon thereafter, Antonio perceived "strange" behavior from Ross and her friends, who were "whispering." (R. at 104–06, 308.) Antonio continued dancing facing the pool and was either bumped or

3

shoved at the center of her back.[2]  As she fell, her right hand "hit the bottom or side of the pool" and she suffered "eight spiral fractures."  (R. at 73, 75.)  She "saw several … doctors, required orthopedic care, … still suffers pain in her right hand[,]" and her "right ring finger is shorter because of the injury and now overlaps her pinky."  *Antonio v. Harrah's Atl. City Propco, LLC*, No. 1:17-cv-09092, 2020 WL 1030842, at *2 (D.N.J. Mar. 3, 2020) (citations omitted).

Antonio sued, and the District Court granted summary judgment for Harrah's.  It held that Harrah's owed Antonio no duty because the "nightclub was an obvious hazard," as "[e]ven without warnings or added security, [Antonio] could have easily observed that dancing close to the edge of the pool on a packed dance floor surrounded by other people presented the possibility of another person bumping into her and causing her to fall into the water." *Id.* at *4.  It further reasoned that "nothing about [Ross's] behavior could have indicated to [Harrah's] that foreseeable harm to [Antonio] existed," and that the eight prior incidents of people being bumped or pushed into the pool were dissimilar because they did not involve "wild dancing." *Id.*

---

[2] Antonio has since filed a criminal complaint against Ross, who was charged with aggravated assault.  During her deposition, Antonio said it was "possibl[e]" that Ross had "accidentally pushed" her.  (R. at 150.)  Antonio pointed Ross out to Harrah's security, and the resulting incident report stated that Ross pushed Antonio into the pool and that Ross and her boyfriend were ejected from the premises.

**II.    DISCUSSION**[3]

Under New Jersey law, a negligence claim requires a showing of "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." *Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013).  The only issue before us is whether Harrah's owed a duty of care to Antonio,[4] which is a question of law that "derive[s] from considerations of public policy and fairness." *Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1258 (N.J. 2013) (citation omitted). Under the circumstances here, the existence of a duty depends on whether the danger of injury posed by conditions at The Pool After Dark was not only foreseeable but a danger that Harrah's should have anticipated would in fact result in injury despite being obvious to the invitees.

It is undisputed that Harrah's is a business owner and Antonio was a business invitee.  Applying the Restatement (Second) of Torts § 343 (1965), New Jersey courts hold that "[b]usiness owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia*

---

[3] The District Court properly exercised jurisdiction under 28 U.S.C. § 1332 and we have jurisdiction pursuant to 28 U.S.C. § 1291.  Our review of the District Court's decision granting summary judgment is plenary. *Halsey v. Pfeiffer*, 750 F.3d 273, 287 (3d Cir. 2014).  Summary judgment is appropriate if no genuine dispute of material fact exists, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

[4] The District Court also stated that there is "nothing in the record that indicates Defendants could have prevented the harm" through "additional security" or "a partition or additional signage[.]" *Antonio*, 2020 WL 1030842, at *5.  Those issues are better suited for the jury when considering Harrah's potential breach of duty, a question that is not before us now.

5

*v. Glass Gardens, Inc.*, 175 N.J. 559, 563 (2003); *see also Clohesy v. Food Circus Supermarkets, Inc.*, 149 N.J. 496, 503 (1997). The first question is thus whether the party area, featuring a pool surrounded by dancing and drinking patrons, was a foreseeably unsafe environment. Even if it were not on its own obvious that people may end up in the pool when they are packed into the pool-side space, up to the pool's edge, with no barrier between them and the pool and with hours of drinking and dancing being the aim of the party, there is an ample record here showing that people regularly did get bumped or shoved into the pool in the months before Antonio's injury.[5] So, yes, it was an unsafe environment in the sense that people had been and were likely to continue to be knocked into the pool, whether deliberately or not.

The next question relates to the obviousness of the hazard. New Jersey applies § 343A of the Restatement, which elaborates that "[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, *unless the possessor should anticipate the harm despite such knowledge or obviousness*." Restatement (Second) of Torts § 343A (1965) (emphasis added); *see also Zentz v. Toop*, 92 N.J. Super. 105, 114–15 (App. Div. 1966), *aff'd*, 234 A.2d 96 (N.J. 1967). The District Court held that Harrah's did not owe

---

[5] To the extent the District Court held that the hazard posed by the pool was *not* foreseeable, we disagree. The question is a broad one, i.e., whether it is foreseeable that a *hypothetical* patron would be bumped, shoved, or knocked by a different *hypothetical* patron into the pool. The Court, however, appears to have approached foreseeability more narrowly, as relating to the predictability of Ross shoving Antonio. *See Antonio*, 2020 WL 1030842, at *4 ("[N]othing about [Ross's] behavior could have indicated to [Harrah's] that foreseeable harm to [Antonio] existed.").

Antonio a duty because the harm posed by the pool should have been obvious to her. *See Antonio*, 2020 WL 1030842, at *4 ("[T]he pool in [Harrah's] nightclub was an obvious hazard that [Antonio], through 'reasonable use of [her] faculties,' could and should have detected."). But, while rightly considering the first part of § 343A, it ignores the remaining part, which asks whether Harrah's should have anticipated harm to invitees despite the obviousness of the hazard. And indeed, it should have. Attendees danced by the pool's edge due to the crowded space and lack of a designated or roped-off dance floor. Disorderly conduct, expulsion, and arrests were common. And at least eight people were pushed or fell into the pool or hot tub in the ten months preceding Antonio's injury. On this record, what happened to Antonio was readily anticipatable, regardless of the obviousness of the hazard. Thus, Harrah's owed a duty of care to Antonio.

## III. CONCLUSION

For the foregoing reasons, we will vacate the District Court's grant of summary judgment and remand for further proceedings.